UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Joseph Anthony Favors,   Civ. No. 21-1103 (PAM/LIB)

    Plaintiff,

v.   **ORDER**

Nancy Johnston and Jodi Harpstead,

    Defendants.

---

This matter is before the Court on Plaintiff's Application to Proceed in forma pauperis ("IFP"), and his subsequent Motion to Amend his pleading. Because Favors has applied for IFP status, the Court examines not only Favors's financial eligibility for IFP status, but also the viability of his claims. See 28 U.S.C. § 1915(e)(2)(B).

In this lawsuit, Plaintiff Joseph Anthony Favors alleges that restrictions placed upon him by the Minnesota Sex Offender Program ("MSOP") regarding his ability to purchase goods from outside sources is an infringement of his federal constitutional rights and state statutory provisions. Because the federal constitutional claims are without merit and the Court lacks jurisdiction over the state-law claims, the Court will deny Favors's application and dismiss this matter without prejudice.

The Court has substantial doubts that Favors qualified financially for IFP status at the time this action was filed. Magistrate Judge Leo I. Brisbois previously ordered Favors to submit financial information from his checking, savings, and institutional trust accounts for the months of February, March, and April 2021, to verify that Favors was unable to pay the filing fee for this matter without undue hardship. (Docket No. 2.) Favors submitted

the information for February and March 2021, but not for April 2021. See Favors v. Internal Revenue Service, No. 21-CV-359 (PJS/TNL), Docket Nos. 16 & 19 (D. Minn). This omission may be purposeful, as Favors admits in his Complaint that he had sufficient funds on April 23, 2021, to request permission to purchase a second musical keyboard. (See Compl. (Docket No. 1) ¶ 19.) This Court doubts that foregoing a second keyboard to pay the filing fee for this matter—or any of the seventeen lawsuits Favors has now filed in this District since January 1, 2021—amounts to the kind of undue hardship contemplated by the IFP statute.

For purposes of this case, however, whether Favors qualified financially for IFP status at the time he initiated this lawsuit is irrelevant. That is because Favors has filed a Complaint that fails to state a claim on which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B)(ii); Atkinson v. Bohn, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam). In reviewing whether a complaint states a claim on which relief may be granted, this Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Aten v. Scottsdale Ins. Co., 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." Id. at 570. In assessing the sufficiency of the complaint, the court may disregard legal conclusions that are couched as factual allegations. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Pro se complaints are to be construed liberally, but the

pleading must still allege sufficient facts to support the claims advanced. See Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004).

Favors's pleading is unnecessarily complicated—38 pages spread across two documents (Docket Nos. 1 & 4-1)—for what amount to relatively straightforward claims for relief. MSOP policy restricts clients from purchasing goods from providers other than those approved by MSOP itself. For example, Favors alleges that MSOP clients are required to purchase food and drinks from the MSOP canteen, even if the same goods may be had for cheaper from other vendors. (E.g., Compl. ¶ 34.) Favors has several theories regarding why this restriction amounts to a federal constitutional violation. None of his theories has any merit.

To begin, Favors argues that any restriction on his ability to purchase from outside vendors amounts to a constitutional violation, as similar restrictions cannot be placed on persons who are not MSOP clients. (E.g., id. ¶ 31.) To determine whether MSOP clients retain a particular constitutional right[1] given their civil commitment, courts in this District have adopted a "modified" Turner analysis. See Ivey v. Mooney, No. 05cv2666, 2008 WL 4527792, at *4 (D. Minn. Sept. 30, 2008) (Tunheim, J.). Under Turner v. Safely, a prison regulation may impinge on an inmate's constitutional rights if it is "reasonably related to legitimate penological interests." 482, U.S. 78, 89 (1987). The court in Ivey, seeking to

---

[1] That Favors may bring constitutional claims premised on restrictions in making purchases from outside vendors is itself a matter of some doubt. See Senty-Haugen v. Goodno, 462 F.3d 876, 886 n.7 (8th Cir. 2006) (finding that restrictions on access to outside vendors was a "de minimis restriction[] with which the Constitution is not concerned . . . ." (quotation omitted)).

3

apply Turner's analytical framework to civil commitments, recognized that "penological interests" were not the appropriate consideration, and instead considered the challenged policy's reasonable relationship to legitimate therapeutic and institutional interests. Ivey, 2008 WL 4527792, at *4, 10. Since Ivey, this District has consistently used the modified Turner analysis in cases brought by MSOP residents challenging the constitutionality of conditions imposed on them.

Courts both in this District and elsewhere have regularly recognized the institutional interests of detention facilities, both penal and non-penal, in limiting the sources of goods that may enter the facility, including MSOP. See, e.g., Semler v. Ludeman, No. 09cv732, 2010 WL 145275, at *14 (D. Minn. Jan. 8, 2010) (Montgomery, J.) (finding restrictions on suppliers in MSOP context consistent with Turner); Branson v. Piper, No. 16cv1790, 2017 WL 9249421, at *2 (D. Minn. May 3, 2017) (Noel, M.J.) (concluding that "[t]o the extent that MSOP's property policy restricts Plaintiff's First Amendment rights, the restriction is substantially outweighed by MSOP's interest in maintaining a secure facility and regulating the introduction of outside products . . . ."); Payne v. Friel, 266 F. App'x 724, 727 (10th Cir. 2008) (per curiam) (upholding dismissal of challenge to prison policy restricting choice of book vendors). Favors does not allege that the MSOP policy at issue is somehow outside the ambit of this authority. MSOP officials have an obvious institutional and safety interest in controlling what goods enter the facility, and Favors has not identified any aspect of the policy that does not appear related to that interest.

Favors also contends that even if the policy itself does not violate his constitutional rights, the manner in which it is applied amounts to an equal-protection violation, as other

4

MSOP clients have been permitted to make purchases from outside vendors. Favors does not allege that his membership within a protected group, such as racial or religious identity, accounts for the difference in treatment. Instead, Favors expressly puts forward a class-of-one equal-protection claim, alleging that he alone has been singled out for inequal treatment.

"The threshold inquiry in an equal protection case is whether the plaintiff is similarly situated to others who allegedly received preferential treatment." Domina v. Van Pelt, 235 F.3d 1091, 1099 (8th Cir. 2000). "To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects." Reget v. City of La Crosse, 595 F.3d 691, 695 (7th Cir. 2010). "A class-of-one plaintiff must . . . provide a specific and detailed account of the nature of the preferred treatment of the favored class, especially when the state actors exercise broad discretion to balance a number of legitimate considerations." Nolan v. Thompson, 521 F.3d 983, 990 (8th Cir. 2008) (internal quotation omitted). Favors falls well short of this requirement. Although Favors alleges in a conclusory manner that similarly situated MSOP clients have been permitted more latitude, he does not provide factual allegations that, if proved true, would establish that any MSOP client truly similarly situated to him has been treated any more favorably. (Compl. Addendum (Docket No. 4-1) ¶ 16.) Indeed, the only way in which the other MSOP clients are alleged to be "similarly situated" to Favors is that they are MSOP clients. Moreover, Favors suggests that the MSOP clients who have been permitted greater outside vendor privileges are <u>not</u> similarly situated insofar as those clients have agreed to

5

participate in sex-offender treatment while, by implication, Favors has not. (See Compl. Addendum ¶ 15.)

Favors also contends that the policy violates his procedural-due-process rights through the policy. According to Favors, a provision of the Minnesota Health Care Bill of Rights creates a protected liberty interest in the right of MSOP clients to purchase goods from outside vendors of their choosing. See Minn. Stat. § 144.651, subd. 24 ("Residents may purchase or rent goods or services not included in the per diem rate from a supplier of their choice unless otherwise provided by law."). But "the Supreme Court has decided that state laws can only create liberty interests that relate to freedom of movement." Senty-Haugen v. Goodno, No. 04cv1077, 2005 WL 2917464, at *4 (D. Minn. Nov. 4, 2005) (Montgomery, J.). Additionally, there is no indication that the Minnesota Legislature through § 144.651 intended to create a liberty interest to which procedural protections attached. Quite the opposite: exclusive authority rests with the state commissioner of health to enforce the provisions of that statute, and the patient's right to seek redress does not extend beyond the grievance procedures provided in § 144.651, subd. 20. See Favors v. Kneisel, 902 N.W.2d 92, 94-96 (Minn. Ct. App. 2017).

Favors also contends that the restriction on access to outside vendors amounts to a violation of his substantive-due-process rights. To succeed on such a claim, Favors must plead facts that, if proved true, would "demonstrate that the government action complained of is truly irrational, that is something more than . . . arbitrary, capricious, or in violation of state law." Creason v. City of Washington, 435 F.3d 820, 824 (8th Cir. 2006) (quotation omitted). The Court has already found that, far from being irrational, the restrictions

Favors alleges are reasonably related to the institutional needs of MSOP. That Favors cannot purchase cheaper soda from outside vendors is not the kind of "conscience-shocking" deprivation required to establish a violation of substantive due process. County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998). The same can be said of Favors's claim that the MSOP policy restricting outside vendors creates unsafe living conditions in violation of the Eighth and Fourteenth Amendments. It is simply not plausibly alleged that the restrictions Favors complains of amount to unsafe or constitutionally deficient conditions of daily living.

Favors remaining claims arise under state law rather than federal law. The Court lacks original subject-matter jurisdiction over these claims. Unlike with the federal-law claims, 28 U.S.C. § 1331 does not provide a basis for the Court's jurisdiction over the state-law claims, and Favors does not allege that the parties are of diverse citizenship such that 28 U.S.C. § 1332(a) may supply jurisdiction over the state-law claims. And the Eighth Circuit has instructed district courts not to exercise supplemental jurisdiction over state-law claims where, as here, all federal law claims are dismissed prior to trial. See Hervey v. County of Koochiching, 527 F.3d 711, 726-27 (8th Cir. 2008).

Accordingly, this matter will be dismissed without prejudice—the federal claims pursuant to § 1915(e)(2)(B), and the state claims for lack of jurisdiction. Favors's Motion to Amend his pleading (Docket No. 4) is granted insofar as the Court has considered both the original Complaint and the proposed supplemental pleading in concluding that relief is not available to Favors in this action.

Accordingly, **IT IS HEREBY ORDERED that**

1. Plaintiff's Motion to Amend (Docket No. 4) is **GRANTED**;

2. Plaintiff's Application to Proceed in forma pauperis (Docket No. 2) is **DENIED**; and

3. This matter is **DISMISSED without prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: <u>Thursday, June 24, 2021</u>

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge
